1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PRESIDIO GROUP, LLC, a Washington
limited liability company, *et al.*,

                    Plaintiffs,

          v.

JUNIPER LAKES DEVELOPMENT, LLC,
an Oregon limited liability corporation, *et al.*,

                    Defendants.,

Case No. C09-5740RJB

ORDER ON
DEFENDANTS JUNIPER
LAKES DEVELOPMENT,
LLC, WHITE KNIGHT
VENTURES, LLC, DAVID
R. AMBROSE AND JANIS
K. ALEXANDER'S
MOTION TO DISMISS

    This matter comes before the court on Defendants Juniper Lakes Development, LLC, White

Knight Ventures, LLC, David R. Ambrose and Janis K. Alexander's Motion to Dismiss.  Dkt. 34. The

court has considered the pleadings filed in support of and in opposition to the motions and the file herein,

and has determined that oral argument is not necessary.

                    PROCEDURAL HISTORY

    On November 27, 2009, plaintiffs filed this civil case (Dkt. 1) and, on April 21, 2010, filed a First

Amended Complaint (Dkt. 28).

    The plaintiffs are Presidio Group, LLC; Presidio Group, LLC, d.b.a. Presidio Group International

LLC, a Washington unincorporated business entity; Jameson Kealii Kauhi, both individually and upon the

behalf of the community property marital estate of Jameson Kealii Kauhi; Cook Ranch Development, a

Washington general partnership; Presidio Group, LLC, general partner, Cook Ranch Development, a

ORDER
Page - 1

Washington general partnership; Jameson Kealii Kauhi, both individually and as managing member of Presidio Group, LLC, a Washington limited liability company, d.b.a., Presidio Group International, LLC, a Washington unincorporated business association; and Jameson Kealii Kauhi, both individually and as manager of Presidio Group International, LLC, a Washington unincorporated business association). Dkt. 1. While it is not clear, it appears that these plaintiffs were plaintiffs in the Quantum Lawsuit in state court in Oregon (see below).

Quantum Development, LLC, was named a defendant earlier in this federal case, along with Justin Kelly, but these defendants were dropped as defendants in the First Amended Complaint. *See* Dkt. 1 and Dkt. 28.

The defendants named in the First Amended Complaint are Juniper Lakes Development, LLC, an Oregon limited liability corporation; White Knight Ventures, LLC, an Oregon limited liability corporation; David Ambrose, individually and managing member and/or member of Juniper Lakes Development, LLC, an Oregon limited liability corporation; David Ambrose, individually and managing member and/or member of White Knight Ventures, LLC, an Oregon limited liability corporation; Janis Alexander, individually and managing member and/or member of Juniper Lakes Development, LLC, an Oregon limited liability corporation; Janis Alexander, individually and managing member and/or member of White Knight Ventures, LLC, an Oregon limited liability corporation. Dkt. 28.

The First Amended Complaint alleges the following claims for relief: (1) violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. § 1962(c) and (d); violation of 42 U.S.C. §§ 1981 and 1982; and (2) a state law claim for tortious interference. The First Amended Complaint also alleges jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332.

<u>MOTION TO DISMISS</u>

On May 5, 2010, defendants filed a motion to dismiss, contending that (1) the First Amended Complaint fails to state a claim for relief under Fed.R.Civ.P. 12(b)(6); (2) the state law claim for tortious interference is not properly before the court on diversity of citizenship because there is not complete diversity of parties; and (3) the court should decline to exercise supplemental jurisdiction over the state law claim. Dkt. 34, at 2. In the alternative, defendants request that the court dismiss all of plaintiffs'

1    claims for lack of subject matter jurisdiction, on the basis that a settlement agreement has been entered

2    into by the parties, and that settlement agreement contains a binding arbitration provision.  Dkt. 34, at 2.

3         On May 18, 2010, plaintiffs filed a response, opposing the motion to dismiss.  Dkt. 38.  Plaintiffs

4    contend that (1) they have pled RICO claim based on mail fraud-wire fraud; (2) plaintiffs have pled a

5    cognizable injury to business or property, pursuant fo 18 U.S.C. § 1964(c); (3) plaintiffs have pled

6    racketeering activity by alleging that defendants injured plaintiffs' intangible property right to receive

7    honest services; (4) plaintiffs have pled a pattern of racketeering activity; (5) Anacapa was also a victim

8    of plaintiffs' racketeering activity; (6) plaintiffs have pled an enterprise because there are multiple parties

9    and corporations; (7) plaintiffs have pled a conspiracy; (8) plaintiffs have stated a claim for violation of

10   42 U.S.C. §§ 1981 and 1982 because they are members of a protected class, and the allegations involve

11   formation and performance of contracts; (9) plaintiffs have stated a claim for intentional tortious

12   interference with an existing contractual relationship.  Dkt. 38.

13        On May 28, 2010, defendants filed a reply, contending that plaintiffs' response does not point to

14   any facts that would support their claims.  Dkt. 40.

15                                        DISCUSSION

16        **1.  Motion to Dismiss for Failure to State a Claim**

17        **Documents Considered.**  Both parties referred to, and plaintiffs provided documents related to

18   the arbitration proceedings/award, and the judgment entered in Multnomah County Circuit court.  *See*

19   Dkt. 39.  These proceedings were referred to in the First Amended Complaint.  The court can, therefore,

20   consider these documents in deciding whether to grant a motion to dismiss for failure to state a claim.

21   However, for purposes of deciding whether the complaint states a claim for relief, these documents are

22   redundant.  The court has relied only on the allegations in the First Amended Complaint (Dkt. 28), and

23   has not considered any other documents.

24        **Oregon Lawsuits.**  In 2006, Presidio Group International, LLC, and other plaintiffs brought a

25   lawsuit (the Quantum Lawsuit) in an Oregon state court, against Quantum Development, LLC, and others.

26   Dkt. 28, at ¶ 8.  *See Presidio Group International, LLC, et al. v. Quantum Development, LLC, et al.,*

27   Oregon Circuit Court for the County of Deschutes, Case No.: CV060709.  Dkt. 28, at ¶ 8.  The plaintiffs

28   in the Quantum Lawsuit contended that they were first in right to an option, apparently related to

1  acquisition of the Cook Ranch property.  Dkt. 28, at  ¶¶  8 and 9.

2       In December of 2006, David Ambrose and Janis Alexander created White Knight Ventures and

3  Juniper Lakes Development. Dkt. 28, at ¶ 9. From November of 2006 until February of 2007, the parties

4  to the Quantum Lawsuit had preliminary settlement discussions.  Dkt. 28, at ¶ 9.

5       Justin Kelly apparently had some role, including a financial interest, in working with Mr.

6  Ambrose, Ms. Alexander, White Knight Ventures and Juniper Lakes Development to acquire the

7  Quantum Lawsuit plaintiffs' interest in the Cook Ranch properties.  Dkt. 28, at ¶ 9.

8       On March 1, 2007, the following agreement was entered into: (1) the plaintiffs in the Quantum

9  Lawsuit assigned their rights to the Cook Ranch Property to Juniper Lakes Development, White Knight

10  Ventures, Mr. Ambrose and Ms. Alexander, through a document referred to in the complaint as a

11  Settlement Agreement; (2) in exchange for obtaining the rights of the Quantum Lawsuit plaintiffs to the

12  Cook Ranch Property, Juniper Lakes Development, White Knight Ventures, Mr. Ambrose and Ms.

13  Alexander agreed to pay the plaintiffs in the Quantum lawsuit $500,000.00; (3) before they assigned their

14  interest in the Cook Ranch Property to Juniper Lakes Development, White Knight Ventures, Mr.

15  Ambrose and Ms. Alexander, the plaintiffs in the Quantum lawsuit had contacted a potential buyer, and,

16  under the Settlement Agreement, were to receive an additional 3% of the purchase price of the Cook

17  Ranch Property if the sale went through; (4) Juniper Lakes Development, White Knight Ventures, Mr.

18  Ambrose and Ms. Alexander paid the plaintiffs in the Quantum lawsuit $30,000; (5) defendants did not

19  pay the plaintiffs $165,000, which was due on March 1, 2007; and (6) Juniper Lakes Development, White

20  Knight Ventures, Mr. Ambrose and Ms. Alexander did not pay the plaintiffs in the Quantum lawsuit the

21  remaining $470,000, according to the schedule set forth in the Settlement Agreement. Dkt. 28, at ¶¶ 9, 12,

22  13, 15 and 22.  The plaintiffs in the Quantum Lawsuit obtained a court order substituting in Juniper Lakes

23  Development as the proper plaintiff in the Quantum Lawsuit. Dkt. 28, at ¶ 14.

24       The First Amended Complaint alleges that Juniper Lakes Development borrowed money from

25  Anacapa Nevada, LLC, and Erich Laetsch on March 12, 2007, to pay off a $175,000 engineering lien

26  recorded on the Cook Ranch property by Welkin Engineering.  Dkt. 28, at ¶ 32.  The loan was secured by

27  the Cook Ranch interest that Juniper Lakes Development and Mr. Ambrose had acquired under the

28  Settlement Agreement with plaintiffs.  Dkt. 28, at ¶ 32.  The First Amended Complaint alleges that

Juniper Lakes Development did not pay off the lien, and that defendants used the money for other purposes.

The First Amended Complaint alleges that Juniper Lakes Development obtained the money from Anacapa, further increasing the debt of Juniper Lakes Development, "thereby frustrating and materially exacerbating plaintiffs' right to recover on the Settlement Agreement." Dkt. 28, at ¶ 33.  On December 11, 2008, Anacapa filed suit against Juniper Lakes Development and Mr. Ambrose in Multnomah County Circuit Court: *Anacapa Nevada, LLC v. Juniper Lakes Development, LLC, and David R. Ambrose*, Case No.: 08-1217834 (Anacapa Lawsuit). Although it is unclear, it appears that the First Amended Complaint alleges that the Oregon Circuit Court awarded defendants' interest in the Cook Ranch property to Anacapa.  Dkt. 28, at ¶ 33.

As a result of the failure of Juniper Lakes Development to pay the money under the Settlement Agreement to the plaintiffs in the Quantum lawsuit, those plaintiffs commenced a binding arbitration action against Juniper Lakes Development, pursuant to the arbitration provision in the Settlement Agreement, seeking recovery of damages for the failure of Juniper Lakes Development to perform.  Dkt. 28, at ¶ 25.  On February 12, 2009, the Quantum Lawsuit plaintiffs obtained an arbitration award against Juniper Lakes Development.  Dkt. 28, at ¶ 26.

In February of 2009, the Quantum Lawsuit plaintiffs filed a Petition to Confirm An Arbitration Award as a Judgment of the Court, and the General (Money) Judgment and Order Confirming Arbitration Award with Multnomah County Circuit Court.  *Jameson Kauhi, Presidio Group, LLC, and Presidio Group International, LLC v. Juniper Lakes Development*, Multnomah County Circuit Court, Case No. 0902-02444.  Dkt. 28, at ¶ 27.

Juniper Lakes Development has not paid the judgment. Dkt. 28, at  ¶¶ 25, 26 and 27.

**Legal Standard.**  Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**RICO Claim.** Plaintiffs contend in the First Amended Complaint that defendants violated the RICO provisions of 18 U.S.C. § 1962(d). Defendants contend that plaintiffs have not stated a claim under RICO, and that this claim should be dismissed.

The purpose of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO) is twofold: (1) to protect legitimate enterprises from being victimized and (2) to protect the public from people using enterprises, both legitimate and illegitimate, as vehicles through which to conduct unlawful activity. *See National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 259 (1994).

The RICO Act generally provides a civil remedy only for acts involving racketeering or the collection of unlawful debt. The list of activities that constitute racketeering is long and exhaustive. *See* 18 U.S.C. § 1961(1). In addition to substantive offenses, the RICO Act outlaws conspiracies to violate any of its substantive provisions. *See* 18 U.S.C. § 1962(d). In order to sustain a conspiracy claim, plaintiffs must prove either that the defendant agreed to violate one of RICO's substantive provisions or that the defendant committed two racketeering activities listed in 18 U.S.C. § 1962. *See U.S. v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984). Generally, commission of racketeering activities requires the use of money obtained through racketeering or participation in the conduct of an enterprise's affairs through racketeering. Thus, a plaintiff is charged with proving that the defendant either agreed to violate RICO's provisions or actually committed two racketeering activities in order to maintain a conspiracy claim.

RICO makes it unlawful for any person who has received income from a pattern of racketeering activity to use or invest the income in any operation or interest affecting interstate commerce. 18 U.S.C. § 1962. In order to state a RICO claim, plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering acts (predicate acts) (5) constituting the proximate cause of injury to plaintiff's property. 18 U.S.C. § 1862(c) and 18 U.S.C. § 1864(c); *Sedema, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

An enterprise is any individual, partnership, corporation, or other legal entity, and any union of a group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4).  A plaintiff must plead the existence of a formal or informal ongoing organization that functions as a unit.  *United States v. Turkette*, 452 U.S. 576, 580 (1981).  The organization must have a structure and that structure must be separate from the pattern of alleged racketeering, providing a mechanism for controlling and directing the affairs of the enterprise. *Chang v. Chen*, 80 F.3d 1293, 1298 (1996).  The structure must have a function beyond the commission of the predicate acts; existence of some other activities is sufficient.  *Chang*, 80 F.3d at 214; *United States v. Riccobene*, 709 F.2d 214, 223-224 (3d Cir. 1989) *as amended*.  There must also be a nexus between the enterprise and the predicate acts.  *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992).

All three of RICO's substantive provisions require a pattern of racketeering, and the conspiracy provision requires an agreement or an actual violation of one of the substantive provisions. Thus, at the heart of any RICO claim is a requirement that there be a pattern of racketeering. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 154, 107 S. Ct. 2759 (1987). A pattern of racketeering is the commission of two or more racketeering activities, which are listed in 18 U.S.C. § 1961(1). In order to establish a pattern of racketeering, plaintiffs must come forth with evidence of racketeering activities that are related to each other and span more than just weeks or months. *River City Mkts.*, 960 F.2d at 1464.

In order to recover under the RICO Act, plaintiffs must demonstrate an injury to their business or property. 18 U.S.C. § 1964(c). Not all injuries are compensable under the RICO Act. *Oscar v. University. Students Co-Op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992). Rather, the injury must be concrete and financial. *Id.* Even economic consequences stemming from an essentially personal injury are not compensable under the RICO Act. *See id.* at 786.

Defendants contend that plaintiffs have failed to allege that an enterprise existed involving the defendants separate and apart from the pattern of activity in which the enterprise engages. The purpose of defendants was to acquire and develop the Cook Ranch property.  Plaintiffs have not pled an enterprise separate and apart from the pattern of activity in which the enterprise engages.

Defendants maintain that plaintiffs have failed to allege a pattern of racketeering activity because all they have alleged is a single scheme related to a real estate deal involving the Cook Ranch property.

1   This case involves various parties' interests in acquiring and developing the Cook Ranch property.  The

2   Anacapa loan was for the purpose of paying off a contractor's lien on the Cook Ranch property.  Plaintiffs

3   have not pled a pattern of racketeering activity sufficient to state a RICO claim.

4       Defendants contend that plaintiffs have failed to allege with particularity the predicate acts based

5   upon fraud, as is required by Fed.R.Civ.P. 9(b). The First Amended Complaint alleges that defendants

6   failed to perform under the Settlement Agreement.  This is a contract issue, not a fraud claim.  Whether

7   defendants used the money from Anacapa to pay off the contractor's lien, and then subsequently lost their

8   interest in the Cook Ranch property is an issue between those parties.  Plaintiffs were not party to that

9   loan.  Plaintiffs have not satisfied the requirements for pleading a claim for fraud.

10      Defendants contend that plaintiffs have failed to allege facts sufficient to state a claim for

11  conspiracy under 18 U.S.C. § 1962(d), because the First Amended Complaint does not state a claim for a

12  substantive RICO violation.  Plaintiffs have not stated a claim for substantive violation of RICO.

13  Accordingly, they have not stated a claim for conspiracy under RICO.

14      **Claims under 42 U.S.C. §§ 1981 and 1982.**  The First Amended Complaint alleges that

15  defendants obtained plaintiffs' interest in the Cook Ranch property by entering into the Settlement

16  Agreement, with the intent not to pay plaintiffs $265,000, "due and attributable to plaintiff Kauhi's ethnic

17  affiliation and racial classification."  Dkt. 28, at 17.  The First Amended Complaint alleges that, as a

18  proximate and/or direct cause of defendants' racially motivated animus, defendants discriminated against

19  plaintiffs in their right to contract.  Dkt. 28, at 17.  Plaintiffs further allege that defendants' conduct aided

20  an abetted a violation of 28 U.S.C. §§ 1981 and 1982.

21      42 USC §1981 provides as follows:

22      § 1981. Equal rights under the law

23      (a) Statement of equal rights. All persons within the jurisdiction of the United States shall
        have the same right in every State and Territory to make and enforce contracts, to sue, be
24      parties, give evidence, and to the full and equal benefit of all laws and proceedings for the
        security of persons and property as is enjoyed by white citizens, and shall be subject to like
25      punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

26      (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and
        enforce contracts" includes the making, performance, modification, and termination of
27      contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the
        contractual relationship.

28
        (c) Protection against impairment. The rights protected by this section are protected against

1   impairment by nongovernmental discrimination and impairment under color of State law.

2   42. U.S.C. § 1982 provides as follows:

3   § 1982. Property rights of citizens

4   All citizens of the United States shall have the same right, in every State and Territory, as
    is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real
5   and personal property.

6   In a Section 1981 action, plaintiffs must show intentional discrimination on account of race. *Evans*

7   *v. McKay*, 869 F.2d 1341, 1344 (9th Cir.1989).  In order to establish a prima facie case under Section

8   1981, plaintiffs must prove: (1) that they are members of a racial minority; (2) that the defendants had an

9   intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities

10  enumerated in the statute.  *Morris v. Office Max, Inc.*, 89 F.3d 411, 413-14 (7th Cir. 1996); *Green v. State*

11  *Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).  The element of intentional discrimination in a § 1981

12  claim is identical to the element of intentional discrimination in a § 1983 claim.  *Hispanic Taco Vendors*

13  *of Washington v. City of Pasco*, 790 F.Supp. 1023, 1031 (E.D. Wash. 1991), *affirmed, Hispanic Taco*

14  *Vendors of Washington v. City of Pasco*, 994 F.2d 676, 679 n. 3. (9th Cir. 1993).

15  Defendants contend that plaintiffs have not alleged any facts to show that they were deprived of

16  rights to real or personal property, or that their rights were violated on account of race.  Defendants

17  further contend that 42 U.S.C. §§ 1981 and 1982 do not apply to contracts after they have been entered

18  into by the parties.  Defendants contend that the allegations merely allege a breach of contract, not a

19  violation of their civil rights.  Plaintiffs allege that they are members of a protected class, but they have

20  not alleged any facts that would establish an intent to discriminate against them on the basis of race.

21  Further, plaintiffs have alleged that defendants breached the Settlement Agreement, and then refused to

22  pay the judgment entered after the arbitration award.  They have not alleged any facts that would show

23  that defendants interfered with their right to make and enforce contracts.

24  **2.  Motion to Dismiss State Claim for Lack of Complete Diversity**

25  28 U.S.C. § 1332 provides in relevant part as follows:

26  (a)  The district courts shall have original jurisdiction of all civil actions where the matter in
    controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–

27  (1) citizens of different States;

28  (2) citizens of a State and citizens or subjects of a foreign state;

ORDER
Page - 9

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).  A motion to dismiss for lack of jurisdiction can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing, may rely on affidavits or any other evidence properly before the court. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989), *cert. denied*, 493 U.S. 993 (1989); *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947).  The court has relied on the declaration of Janis K. Alexander, who states that she is a resident of Vancouver, Washington.  Dkt. 36.

A court has subject matter jurisdiction under 18 U.S.C. § 1332(a) when there is complete diversity. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (discussing the requirement of diversity to establish subject matter jurisdiction under 28 U.S.C. § 1332(a)).  In this case, the First Amended Complaint alleges that plaintiffs are citizens of Washington and defendants are citizens of Oregon.  Dkt. 28, at ¶ 7.  However, Ms. Alexander, a defendant, states in her declaration that she is a citizen of Washington.  Plaintiffs have not met their burden for establishing that there is complete diversity of citizenship.  Accordingly, the state claims alleged are not properly before the court on diversity jurisdiction.

### 3.  Supplemental Jurisdiction over State Law Claim for Tortious Interference

Plaintiffs have alleged a claim for tortious interference with an existing contractual relationship.  Dkt. 28, at ¶¶ 55 - 63.

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy.  The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

By this order, all of the claims over which the court has original jurisdiction are dismissed.  The

1   state law claim is based upon Oregon law.  Further, the arbitration proceeding, and recording of the

2   judgment occurred in Oregon.  To the extent that plaintiffs state a claim for tortious interference, they

3   raise issues of state law that should be decided in conjunction with the proceedings that have already

4   occurred in Oregon.  The court should decline to exercise supplemental jurisdiction over this state law

5   claim, and the claim should be dismissed without prejudice.

6          **4. Arbitration Provision of Settlement Agreement**

7        Defendants request that, if the court does not dismiss all of plaintiffs' claims for relief, the complaint

8   should be dismissed on the grounds that the court is without jurisdiction over plaintiff's claims because the

9   Settlement Agreement included a binding arbitration provision.  The court need not reach this issue.

10  Plaintiffs have not stated a claim for relief under RICO, or 28 U.S.C. §§ 1981 and 1982; and the court

11  declines to exercise supplemental jurisdiction over plaintiff's state law claim.

12         **5. Further Amendment of Complaint**

13       Plaintiffs filed a 223 page complaint.  On March 31, 2010, the court granted defendants' motion for a

14  more definite statement, and ordered as follows: "The Motion for a More Definite Statement should be

15  granted, and plaintiffs should be granted leave to file an amended complaint, limited to 20 pages, that clearly

16  alleges the claims asserted against defendants." Dkt. 26, at 4.  The First Amended Complaint contains only

17  conclusory statements, with insufficient factual allegations to state a claim for relief.  In their response to the

18  motion to dismiss, plaintiffs make the same conclusory statements as they made in the complaints.  In their

19  response, they argue law that is not on point.

20       A careful reading of the complaint shows that plaintiffs entered into a contract with defendants;

21  plaintiffs allege that defendants breached the contract; plaintiffs obtained an award at arbitration; and

22  judgment was entered confirming that award.  Period.  Plaintiffs were given the opportunity to file an

23  amended complaint, after the court clearly informed them of the deficiencies in the original complaint.  They

24  should not be afforded an opportunity to file another amended complaint.  While a dismissal under

25  Fed.R.Civ.P. 12(b)(6) should be without prejudice, plaintiffs are on notice that they may be subject to

26  sanctions under Fed.R.Civ.P. 11 if they continue to pursue claims, by filing another case, that are wholly

27  without merit.

28

ORDER
Page - 11

1    Therefore, it is hereby **ORDERED** that Defendants Juniper Lakes Development, LLC, White

2   Knight Ventures, LLC, David R. Ambrose and Janis K. Alexander's Motion to Dismiss (Dkt. 34) is

3   **GRANTED**, in the following respect: (1) plaintiffs' claims against defendants for violation of violation

4   of the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. § 1962(c) and (d)

5   are **DISMISSED WITHOUT PREJUDICE**; (2) plaintiffs' claims against defendants for violation of 42

6   U.S.C. §§ 1981 and 1982 are **DISMISSED WITHOUT PREJUDICE**; and (2) the court **DECLINES** to

7   exercise supplemental jurisdiction over plaintiffs' state law claim for tortious interference with existing

8   contractual relationship, and that claim is **DISMISSED WITHOUT PREJUDICE**.  This case is

9   **DISMISSED**.

10    The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

11   party appearing *pro se* at said party's last known address.

12    DATED this 1st day of June, 2010.

13

14

15    Robert J. Bryan
      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28